IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
ANDERSON/GREENWOOD DIVISION

| | | |
|---|---|---|
| Ivan Hernandez, Gary Rosenberger, | ) | Case No. 8:25-cv-12541-JDA |
| Christiana Adegbesan, | ) | |
| Stephen Deese, | ) | |
| | ) | |
| Plaintiffs, | ) | **OPINION AND ORDER** |
| | ) | |
| v. | ) | |
| | ) | |
| Quanta Standard, Inc.; Mark Reid Davis, | ) | |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |

This matter is before the Court on an Order to Show Cause why Plaintiffs' claim under the Fair Labor Standards Act (the "FLSA" or the "Act") should not be dismissed [Doc. 27]. For the reasons to be discussed, the Court is unpersuaded by Plaintiffs' response [Doc. 30] and dismisses the FLSA claim, the only federal claim included in the Complaint. Because only federal-question jurisdiction is alleged and the Court declines to exercise supplemental jurisdiction over the state law claims, the Court dismisses the state claims as well.

**APPLICABLE LAW**

Under Rule 12(b)(6) of the Federal Rules of Civil Procedure, a claim should be dismissed if it fails to state a claim upon which relief can be granted. When considering a motion to dismiss, the court should "accept as true all well-pleaded allegations and should view the complaint in a light most favorable to the plaintiff." *Mylan Lab'ys, Inc. v. Matkari*, 7 F.3d 1130, 1134 (4th Cir. 1993). However, the court "need not accept the legal conclusions drawn from the facts" nor "accept as true unwarranted inferences,

unreasonable conclusions, or arguments." *E. Shore Mkts., Inc. v. J.D. Assocs. Ltd. P'ship*, 213 F.3d 175, 180 (4th Cir. 2000). Further, for purposes of a Rule 12(b)(6) motion, a court may rely on only the complaint's allegations and those documents attached as exhibits or incorporated by reference. *See Simons v. Montgomery Cnty. Police Officers*, 762 F.2d 30, 31–32 (4th Cir. 1985). If matters outside the pleadings are presented to and not excluded by the court, the motion is treated as one for summary judgment under Rule 56 of the Federal Rules of Civil Procedure. Fed. R. Civ. P. 12(d).

With respect to well pleaded allegations, the United States Supreme Court explained the interplay between Rule 8(a) and Rule 12(b)(6) in *Bell Atlantic Corp. v. Twombly*:

> Federal Rule of Civil Procedure 8(a)(2) requires only "a short and plain statement of the claim showing that the pleader is entitled to relief," in order to "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the "grounds" of his "entitle[ment] to relief" requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. Factual allegations must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true (even if doubtful in fact).

550 U.S. 544, 555 (2007) (footnote and citations omitted); *see also* 5 Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1216, at 235–36 (3d ed. 2004) ("[T]he pleading must contain something more . . . than a bare averment that the pleader wants compensation and is entitled to it or a statement of facts that merely creates a suspicion that the pleader might have a legally cognizable right of action.").

2

"A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* The plausibility standard reflects the threshold requirement of Rule 8(a)(2)—the pleader must plead sufficient facts to show he is entitled to relief, not merely facts consistent with the defendant's liability. *Twombly*, 550 U.S. at 557; *see also Iqbal*, 556 U.S. at 678 ("Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." (internal quotation marks omitted)). Accordingly, the plausibility standard requires a plaintiff to articulate facts that, when accepted as true, demonstrate that the plaintiff has stated a claim that makes it plausible the plaintiff is entitled to relief.[1] *Francis v. Giacomelli*, 588 F.3d 186, 193 (4th Cir. 2009).

A district court is authorized, under certain circumstances, to dismiss a claim for failure to state a claim sua sponte. *Robertson v. Anderson Mill Elem. Sch.*, 989 F.3d 282, 290–91 (4th Cir. 2021). Such dismissals are appropriate only if "the party whose complaint stands to be dismissed [is] afforded notice and an opportunity to amend the complaint or otherwise respond." *Id.* at 291 (internal quotation marks omitted).

---

[1] "[E]ven after *Iqbal* and *Twombly*, a plaintiff may state a claim based 'upon information and belief,' especially if the facts are peculiarly within the defendant's knowledge and control, so long as an inference of culpability is plausible." *Dedrick v. Abilene Motor Express, Inc.*, No. 1:21CV00027, 2021 WL 5236817, at *6 (W.D. Va. Nov. 8, 2021); *see Wells v. Moore Cnty. Schs. Bd. of Educ.*, No. 1:23CV412, 2025 WL 1348491, at *6 (M.D.N.C. May 8, 2025).

## BACKGROUND

Plaintiff filed this action on September 12, 2025.  [Doc. 1.]  The Complaint alleges the following facts.

Defendant Quanta Standard, Inc. ("Quanta") is a company organized under Delaware law and wholly owned by Defendant Mark Reid Davis, who is Quanta's chief executive officer and a resident of Westminster, South Carolina.  [*Id.* ¶¶ 6–7.]  Plaintiff Ivan Hernandez is a resident of the country of Colombia.  [*Id.* ¶ 8.]  He was hired by Davis on November 11, 2024, to work as a chief strategy officer for Quanta and continues to work for Quanta.  [*Id.*]  Plaintiff Gary Rosenberger is a resident of Annapolis, Maryland. [*Id.* ¶ 9.]  He was hired by Davis on November 15, 2024 to work as a chief of staff for Quanta and worked for Quanta until January 17, 2025.  [*Id.*]  Plaintiff Christiana Adegbesan is a resident of Bowie, Maryland.  [*Id.* ¶ 10.]  She was hired by Davis on January 22, 2025, to work as a chief of staff for Quanta and worked for Quanta until January 29, 2025.  [*Id.*]  Plaintiff Stephen Deese is a resident of Alexandria, Virginia.  [*Id.* ¶ 11.]  He was hired by Davis on October 29, 2024, to work as a managing director for Quanta and worked for Quanta until January 17, 2025.  [*Id.*]

At all relevant times, Davis has had sole responsibility for, and made all decisions regarding, Plaintiffs' hiring, job duties, hours worked, and compensation.  [*Id.* ¶ 7.]  As Quanta's owner and CEO, Davis has the authority to hire and fire Quanta's employees, supervise their work, determine the rate and method of payment for them, and make all other decisions regarding their terms of employment and compensation.  [*Id.* ¶ 12.]  Upon beginning work at Quanta, each of the Plaintiffs received an offer letter, signed by Davis, setting out their job title, responsibilities, and compensation.  [*Id.* ¶ 13.]  All of the Plaintiffs

countersigned their offer letters prior to beginning work.  [*Id.*]  The offer letters provide for the following compensation:  Hernandez, $250,000 per year; Adegbesan, $150,000 per year; Rosenberger, "combined compensation," consisting of base salary and stock options of $150,000 per year; and Deese, "combined compensation," consisting of base salary and stock options of $150,000 per year.  [*Id.*]

During the course of their employment with Quanta, each of the Plaintiffs worked, on average, 60 hours per week.  [*Id.* ¶ 14.]  On multiple occasions during Plaintiffs' employment, Davis made oral and written representations to Plaintiffs that Quanta was on the verge of receiving funding from an outside investor and that Plaintiffs would receive compensation for their work.  [*Id.* ¶ 15.]  However, no such compensation ever materialized, and, to date, none of the Plaintiffs have received any compensation for their work.  [*Id.* ¶¶ 15–16.]

The Complaint includes a cause of action under the FLSA for willful failure to pay at least federal minimum wage, *see* 29 U.S.C. § 206, as well as Virginia statutory claims for Deese, *see* Va. Code §§ 40.1-28.10, 40.1-29, and Maryland statutory claims for Rosenberger and Adegbesan, *see* Md. Code Ann., Lab. & Empl. §§ 3-505, 3-507.2. [Doc. 1 ¶¶ 17–34.]  The Complaint also alleges a state law claim for breach of contract. [*Id.* ¶¶ 35–39.]  For relief, Plaintiffs request back pay, liquidated damages, prejudgment interest, and attorneys' fees and costs.  [*Id.* at 6–7.]

On March 10, 2026, Defendants filed a motion to dismiss for failure to state a claim and for lack of jurisdiction.[2]  [Doc. 18.]  Plaintiffs filed a response opposing the motion on

---

[2] Defendants' only jurisdictional arguments are that the Court lacks subject matter jurisdiction over Plaintiffs' FLSA claim and that if the Court dismisses Plaintiffs' FLSA

March 26, 2026, and, on April 1, 2026, Defendants filed a reply.  [Docs. 25; 26.]  In their reply brief, Defendants argued for the first time that Plaintiffs' FLSA claim should be dismissed because Plaintiffs have not adequately alleged that Quanta did not meet the annual $500,000 minimum gross sales or business revenue requirement in 2024 or 2025 or that the interstate commerce exception applies.  [Doc. 26 at 2.]  As a result, on April 6, 2026, the Court issued an order requiring that Plaintiffs show cause why the FLSA claim should not be dismissed on this basis (the "Show Cause Order").  [Doc. 27.]  Plaintiffs have now filed a response and Defendants have filed a reply and a supplemental declaration.  [Docs. 30; 35; 37.]

## DISCUSSION

**Plaintiffs' FLSA Cause of Action Fails to State a Claim**

"As a remedial and humanitarian statute, the FLSA seeks to protect all covered workers from substandard wages and oppressive working hours."  *Chavez-Deremer v. Med. Staffing of Am., LLC*, 147 F.4th 371, 396 (4th Cir. 2025) (internal quotation marks omitted).  "To accomplish these goals, the FLSA requires employers to pay their employees both a minimum wage and overtime pay."  *Conner v. Cleveland Cnty.*, 22 F.4th 412, 420 (4th Cir. 2022).

"To sufficiently plead an FLSA claim, and unlock FLSA's [minimum wage] protections, a plaintiff must plead that they either (1) engaged in commerce or in the production of goods for commerce (termed 'individual coverage'); or (2) were employed in an enterprise engaged in commerce or in the production of goods for commerce

---

claim, the Court should decline to exercise supplemental jurisdiction over the remaining, state law claims.  [Doc. 18-1 at 3, 16.]

(termed 'enterprise coverage')."[3] *Gonzalez Cabrera v. Vargas Servs.*, No. GLR-24-3200, 2025 WL 1569957, at *3 (D. Md. June 3, 2025) (internal quotation marks omitted); *see also* 29 U.S.C. §§ 206(a); 203(b), (j), (s)(1)(A)(i)–(ii).

Here, Plaintiffs argue they have properly alleged both individual and enterprise coverage as to Plaintiffs other than Hernandez[4] [Doc. 30], and the Court will consider these two types of coverage seriatim.

### Individual Coverage

An employee has individual coverage if he is "'engaged in commerce.'" *Leyva v. Avila*, 634 F. Supp. 3d 670, 675 (D. Ariz. 2022) (citing 29 U.S.C. §§ 206(a), 207(a)). The FLSA defines "commerce" as "trade, commerce, transportation, transmission, or communication among the several States or between any State and any place outside thereof." 29 U.S.C. § 203(b). The federal regulations provide, as is relevant here:

> Employees are 'engaged in commerce' within the meaning of the Act when they are performing work involving or related to the movement of persons or things (whether tangibles or intangibles, and including information and intelligence) among the several States or between any State and any place outside thereof. . . . Typically, but not exclusively, employees engaged in interstate and foreign commerce include employees in distributing industries, such as wholesaling or retailing, who sell, handle or otherwise work on goods moving in interstate commerce as well as workers who order, receive, pack, ship, or keep records of such goods; *clerical and other workers who regularly use the mails, telephone or telegraph*

---

[3] Although Defendants argue that failure to satisfy this pleading requirement deprives the Court of subject matter jurisdiction over Plaintiffs' FLSA claim [Doc. 26 at 2], the coverage issue is an element of a plaintiff's claim that must be pled and proven, not a jurisdictional issue, *see Velasquez v. Salsas & Beer Rest., Inc.*, 735 F. App'x 807, 808–09 (4th Cir. 2018) (citing *Arbaugh v. Y&H Corp.*, 546 U.S. 500, 515–16 (2006)).

[4] Plaintiffs concede that because Hernandez resided in Colombia during his time with Quanta, he is not subject to FLSA coverage and does not have an FLSA claim. [Docs. 23 at 2 n.1; 30 at 1 n.1.]

*for interstate communication*; and employees who regularly travel across State lines while working.

29 C.F.R. § 779.103 (emphasis added).

Plaintiffs argue that they engaged in commerce because their work involved regular interstate communication.  [Doc. 30 at 2–3.]  The regulations specifically "recognize telephone communication is an instrumentality or channel of commerce" and provide that "employees whose work involves 'regular and recurrent' use of the telephone for communications across State lines are covered by the FLSA."  *Leyva*, 634 F. Supp. 3d at 678–79 (quoting 29 C.F.R. § 776.10).  The regulations state:

> [E]mployees whose work involves the continued use of the interstate mails, telegraph, telephone or similar instrumentalities for communication across State lines are covered by the Act. This does not mean that any use by an employee of the mails and other channels of communication is sufficient to establish coverage. But *if the employee, as a regular and recurrent part of his duties, uses such instrumentalities in obtaining or communicating information or in sending or receiving written reports or messages, or orders for goods or services, or plans or other documents across State lines*, he comes within the scope of the Act as an employee directly engaged in the work of "communication" between the State and places outside the State.

29 C.F.R. § 776.10(b) (emphasis added) (footnote omitted).

Plaintiffs argue that they are individually covered because Davis was based in South Carolina; Quanta's office was in Washington, D.C.; and Plaintiffs lived in Virginia, Maryland, and Colombia.  [Doc. 30 at 3.]  They contend that "[g]iven their geographical spread across the country, their work inevitably requires them to regularly communicate with one another across and outside of state lines."  [*Id.*]  As support for their argument, Plaintiffs cite to paragraphs in the Complaint alleging Plaintiffs' residences and the fact that Quanta's website states that it is based in Washington, D.C. despite the fact that it

8

has no permanent physical office or address.[5]  [*Id.* (citing Doc. 1 ¶¶ 6–11).]  Plaintiffs further contend that they "have copious team messages which evidence their written communications with [Davis]," and they attach to their brief what appear to be screenshots of such messages.  [*Id.* at 3 n.2; Doc. 30-3.]  The Court is unconvinced that the Complaint adequately pleads individual coverage as to any Plaintiff.

Simply put, nothing in the Complaint indicates that any Plaintiff utilized any instrumentalities for communication across state lines, let alone "as a regular and recurrent part of his duties," 29 C.F.R. § 776.10.  As for the apparent screenshots of messages that Plaintiffs submitted with their response to the Show Cause Order, the parties debate the messages' admissibility and legal significance [Docs. 30 at 4;35 at 5– 7, 10–12], but those issues are beside the point because none of the communications Plaintiffs point to are referenced in the Complaint [*see generally* Doc. 1].  "At the pleadings stage, courts are limited to considering the four corners of the complaint and the documents attached or incorporated thereto."  *Guerrero v. Ollie's Bargain Outlet, Inc.*, 115 F.4th 349, 356 (4th Cir. 2024).  Accordingly, the Court concludes that Plaintiffs have not adequately pled individual coverage.

### Enterprise Coverage

"The FLSA defines enterprise coverage as an enterprise that (1) 'has employees engaged in commerce or in the production of goods for commerce, or . . . handling, selling, or otherwise working on goods or materials that have been moved in or produced for

---

[5] Plaintiffs also cite to a paragraph in their Complaint alleging that "[o]n multiple occasions during Plaintiffs' employment, Davis made oral and written representations to Plaintiffs that [Quanta] was on the verge of receiving funding from an outside investor, and that Plaintiffs would receive compensation for their work."  [Doc. 30 at 3 (citing Doc. 1 ¶ 15).]

commerce by any person[;]' and (2) 'whose annual gross volume of sales made or business done is not less than $500,000.'" *Gonzalez Cabrera*, 2025 WL 1569957, at *3 (alterations in original) (quoting 29 U.S.C. § 203(s)(1)(A)(i–ii)).

In response to the Show Cause Order, Plaintiffs point to extrinsic evidence of several statements that Davis made in January 2025—one stating that he was going to ask his doctor to lend him $800,000 so that he could pay his employees; another stating that Quanta had secured sales and that Davis was taking a loan; and a third stating that Quanta had been contacted by a firm that wanted to pay Quanta in order for Quanta to let the firm do certain work. [Doc. 30 at 4 (citing Doc. 30-3 at 21, 23, 24).] It is unclear why Plaintiffs would believe that such facts would be sufficient to plead enterprise coverage. Regardless, however, because no allegations relating to these statements appear anywhere in the Complaint, the Court cannot consider them at the pleadings stage. *See Guerrero*, 115 F.4th at 356.

For all of these reasons, Plaintiffs' FLSA cause of action is dismissed for failure to state a claim.[6]

**The Court Declines to Exercise Supplemental Jurisdiction**

The remaining state law claims could be heard by this Court through the exercise of supplemental jurisdiction, which allows federal courts to hear and decide state law

---

[6] Plaintiffs request that they be granted leave to amend their Complaint to add the information they have submitted with it. [Doc. 30 at 1.] However, Plaintiffs have not filed a formal motion, nor have they offered any satisfactory explanation of how the extrinsic evidence they have referred to would be sufficient to establish individual or extrinsic coverage. Accordingly, the Court denies Plaintiffs' informal request for leave to amend at this time.

claims along with federal claims.[7] Federal courts are permitted to decline to exercise supplemental jurisdiction pursuant to 28 U.S.C. § 1367(c)(3), however, if "the district court has dismissed all claims over which it has original jurisdiction." A court has "wide latitude in determining whether or not to retain jurisdiction over state claims when all federal claims have been extinguished." *Shanaghan v. Cahill*, 58 F.3d 106, 110 (4th Cir. 1995). In deciding whether to exercise supplemental jurisdiction, courts look at "convenience and fairness to the parties, the existence of any underlying issues of federal policy, comity, and considerations of judicial economy." *Id.* "[G]enerally, when a district court dismisses all federal claims in the early stages of litigation—e.g., at the summary-judgment stage—it should decline to exercise jurisdiction over any remaining pendent state law claims by dismissing those claims without prejudice." *Henderson v. Harmon*, 102 F.4th 242, 251 (4th Cir. 2024) (internal quotation marks omitted) (affirming district court's granting of summary judgment to defendants on the only remaining federal claim and declining to exercise supplemental jurisdiction and dismissing the state law claim without prejudice).

---

[7] A civil action for the state law claims could be cognizable in this Court under the diversity statute if that statute's requirements are satisfied. However, the Complaint alleges only federal-question and supplemental jurisdiction [Doc. 1 ¶¶ 3–4], and, in any event, does not allege that the requirements for diversity jurisdiction are satisfied. In particular, the Complaint does not allege complete diversity, which depends upon the state citizenship of each party, which in turn depends upon the parties' national citizenship and domicile. *See Axel Johnson, Inc. v. Carroll Carolina Oil Co.*, 145 F.3d 660, 663 (4th Cir. 1998) ("[S]tate citizenship for purposes of diversity jurisdiction depends . . . on national citizenship and domicile."). Although the Complaint alleges the residences of each of the individual parties [Doc. 1 ¶¶ 7–11], it does not allege their domiciles, and "'[d]omicile' is not necessarily synonymous with 'residence'" insofar as "one can reside in one place but be domiciled in another." *Miss. Band of Choctaw Indians v. Holyfield*, 490 U.S. 30, 48 (1989).

In this case, dismissal of the state law claims is appropriate in light of the *Shanaghan* factors. The remaining claims present state law questions. Additionally, judicial economy will not be hindered by declining to exercise supplemental jurisdiction over the state law claims. Accordingly, the court declines to exercise supplemental jurisdiction over Plaintiffs' state law claims in this case and dismisses them without prejudice.

## CONCLUSION

In sum, for the reasons explained, Plaintiffs' action is DISMISSED. Dismissal is without prejudice, except for the dismissal of Plaintiffs' FLSA claim, which is with prejudice.[8] *See James Cape & Sons Co. v. PCC Constr. Co.*, 453 F.3d 396, 401 (7th Cir. 2006) (concluding that the district court was not required to dismiss the complaint without prejudice where the plaintiff did not properly request to amend the complaint); *id.* ("District judges are not mind readers, and should not be required to explain to parties whether or how their complaints could be drafted to survive a motion to dismiss.").

IT IS SO ORDERED.

<u>s/Jacquelyn D. Austin</u>
United States District Judge

July 21, 2026
Greenville, South Carolina

---

[8] Defendants' motion to dismiss [Doc. 18] is found as moot.